Marina TOMAN, a minor by her father and next friend Kurt Toman and Kurt TOMAN, Plaintiffs, Appellees,

v.

UNDERWRITERS LABORATORIES, INC., Defendant and Third-Party Plaintiff, Appellant,

v.

MORRIS STRUHL, INC., et al., Third-Party Defendants, Appellees.

Nos. 82–1452, 82–1517 and 82–1518.

United States Court of Appeals, First Circuit.

Argued Dec. 10, 1982.

Decided April 4, 1983.

Francis J. Higgins, Chicago, Ill., with whom John J. Verscaj, Bell, Boyd & Lloyd, Chicago, Ill., Harvey Weiner, and Peabody & Arnold, Boston, Mass., were on brief, for Underwriters Laboratories, Inc.

Peter D. Cole, Groton, Mass., with whom John F. Burke, Jr., and Badger, Sullivan, Kelly & Cole, P.C., Boston, Mass., were on brief, for Morris Struhl, Inc., et al.

Peter L. Puciloski, Boston, Mass., with whom Regina E. Roman, and Sugarman, Rogers, Barshak & Cohen, Boston, Mass., were on brief, for Superior Elec. Products, Inc.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, and SMITH,* Senior District Judge.

PER CURIAM.

Underwriter's Laboratories Inc. (UL) took separate appeals from separate judgments [1] dismissing Counts I and III of UL's separate third-party complaints against Morris Struhl, Inc. (Struhl) and Superior Electric Products, Inc. (Superior). This court consolidated the appeals.

The complaint in this diversity case was brought on behalf of Marina Toman for burns she received when her bedding and nightclothes, allegedly ignited by a Chic

---

* Of the District of Montana, sitting by designation.

1. The district court, 532 F.Supp. 1017, determined that there was no just reason for delay and directed the entry of final judgments. The judgments followed orders granting Struhl's motion to dismiss and Superior's motion for summary judgment.

hairdryer, flamed. The Chic hairdryer was manufactured by Superior and distributed by Struhl. The complaint alleges that UL was negligent in testing and approving the hairdryer; that the manufacturer and distributor relied on that testing and in that reliance manufactured and distributed the hairdryer; and that plaintiffs relied on the UL approval marks on the hairdryer.

In third-party complaints, which are virtually identical, UL seeks indemnification based on principles of common law indemnification and upon contracts to indemnify. The third-party complaint alleges that: UL is basically a testing organization; it tests samples of products submitted to it by subscribers; if the samples meet UL's minimum safety requirements then, and only then, the subscribers are permitted to attach labels containing UL's registered marks to such of the subscribers' products; UL did not affix its marks to the dryer in question, and if the dryer bore the UL trademarks, they were placed there by Superior or Struhl. We do not decide whether any of the various listing agreements constitute contracts of indemnity, but we do say that, if such agreements are proved, they would indicate at the minimum that both Struhl and Superior agreed not to use UL marks upon any products which did not meet UL's standards.

■ The district court dismissed the third-party complaints upon the theory that:

> [i]f UL is liable for anything it will be for its own negligence only, in causing its label to be affixed to the hairdryer. If UL did not test and approve the hairdryer, or if UL's requirements were not negligently promulgated, or if UL did not *negligently* test and approve the hairdryer, it cannot be liable under the plaintiffs' complaint even if Struhl or Superior did affix the UL label.

We agree that under the law of Massachusetts there is no common law right to indemnification if UL, Superior, and Struhl were jointly negligent. *Ford v. Flaherty,* 364 Mass. 382, 305 N.E.2d 112 (1973); *Stewart v. Roy Bros., Inc.,* 358 Mass. 446, 265 N.E.2d 357 (1970); *Hollywood Barbecue Co. v. Morse,* 314 Mass. 368, 50 N.E.2d 55 (1943); *Gray v. Boston Gas Light Co.,* 114 Mass. 149, 19 Am.Rep. 324 (1873).

But a party who is only vicariously liable may be entitled to indemnity. *Garbincius v. Boston Edison Co.,* 621 F.2d 1171 (1st Cir.1980); *Hollywood Barbecue Co. v. Morse,* 314 Mass. 368, 50 N.E.2d 55 (1943). Thus, in *Garbincius,* Boston Edison had a duty to the public to keep its premises reasonably safe. That duty was nondelegable, and Boston Edison was liable when a plaintiff was injured because an independent contractor failed to adequately guard an excavation. An independent contractor undertook the excavation, and it was his duty under the contract to guard the excavation. Boston Edison was held to be but vicariously liable, it having done nothing to bring about the accident.

■ When the case is tried, it may be that at the close of the evidence it will appear that UL did not test the dryer causing the damage, it did not approve the specifications for it, and it did not affix the trademarks to the package or to the dryer itself. It may be that UL did approve the cord which was affixed to the dryer and that the cord did bear the UL marks. But we think that the allegations of the complaint[2] are broad enough to encompass a theory that under some possible combination of facts there was some kind of a duty, which UL violated, to police the use of its approval marks.[3] While the outer bounds of indemnity under Massachusetts common

---

**2.** The complaint in part alleges:

Defendant negligently endorsed, certified and approved said product and negligently permitted their label and seal to be used on said hairdryer thereby representing to the public and to Marina Toman and her family in particular that said product was safe for its intended uses, when the defendant knew or reasonably should have known that said hairdryer was inherently hazardous and unsafe for normal, intended and foreseeable useage [sic].

**3.** We do not here endorse such a rule, but we think that we should not, in the absence of all of the facts, declare a rule to the contrary.

law are unclear,[4] such a duty in UL is arguably analogous to a landowner's duty to police land, or a utility's duty to police a job site, breaches of which have been held to give rise to constructive negligence, vicarious liability, and a right to indemnity.

It appears to us that this case poses some extremely difficult questions of law and fact and that, until the facts are fully developed, the obligations of the respective parties should not be declared.

*The judgments dismissing Counts I and III of the third-party claims against Struhl and Superior are reversed, and the cause is remanded to the district court for further proceedings.*

---

4. Defendants urge that common law indemnity extends only to landowners and municipalities. While the rule first arose in such cases (*see Stewart v. Roy Bros., Inc.,* 358 Mass. 446, 458, 265 N.E.2d 357, 365 (1970)), its reach is not so limited (*see id.*), and a recent case suggests broader application. *See Shea v. Bay State Gas Co.,* 383 Mass. 218, 418 N.E.2d 597, 601 (Mass.1981). How far *Shea* reaches, and whether indemnity lies here, are questions we leave to the district court in the first instance upon development of the facts.